UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO.: 24-CV-20982

TOBY BEKERMAN

Plaintiff,

vs.

CELEBRITY CRUISES, INC. a foreign Corporation, with its base of operations and principal place of business in Miami-Dade County, Florida and division of ROYAL CARIBBEAN CRUISES, LTD.

Defendant
_______________________________________________________/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, TOBY BEKERMAN, by and through undersigned counsel and sues the Defendant, CELEBRITY CRUISES INC, A DIVISION OF ROYAL CARIBBEAN CRUISES, LTD., and alleges as follows:

## GENERAL ALLEGATIONS

1. This is an action for damages which exceed Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332.*

2. At all times material Plaintiff, TOBY BEKERMAN, hereafter referred to as "MRS. BEKERMAN" was and is a resident and citizen of the State of New York.

3. At all times material, Defendant, CELEBRITY CRUISES INC., a division of ROYAL CARIBBEAN CRUISES, LTD., hereafter referred to as "CELEBRITY", was and is a

foreign corporation with its base of operations and principal place of business in Miami-Dade County, Florida.

4. At all times material, Cleofe Cleofe, R.N., was a nurse employee, or agent of Defendant, CELEBRITY, and was at all times material acting within the scope and course of her employment or agency with CELEBRITY.

5. At all times material, Karthik Chandrasekar, shipboard physician, was an employee or agent of Defendant, CELEBRITY, as its ship's physician and was at all times material acting within the scope and course of his employment or agency with CELEBRITY.

6. At all times material, Defendant, CELEBRITY, was the owner and/or operator of the cruise ship *CELEBRITY EDGE*.

7. On December 14, 2022[1], MRS. BEKERMAN, was a fare paying passenger on the *CELEBRITY EDGE*.

8. On that date as she was walking on deck 14 in way of the "Magic Carpet" bar, she slipped and fell and suffered an injury to her left hip. The deck was wet and slippery because it had rained earlier in the day.

9. CELEBRITY knew or should have known of the unreasonably slippery and dangerous nature of the deck when wet because there had been a number of previous slip and fall accidents on this particular deck surface.

10. In addition to the prior falls, CELEBRITY was aware of the dangerous nature of the deck surface because of its investigation of prior similar incidents on the same or substantially similar deck surfaces due to is statutory obligation to investigate accidents of this

[1] Normally there is a one-year limitation period for instituting a claim, but Defendant Celebrity/RCCL extended the limitation period to March 15, 2024.

type and to keep a data base of accidents of these types pursuant to the ISM Code, 46 USC 3200, *et seq.*

11. Hazards like unreasonable slipperiness are hidden because unreasonable slipperiness cannot be determined by use of the senses

12. MRS. BEKERMAN was attended to at the scene of the fall by various crew members who put her in a wheelchair and transported her to the ship's medical infirmary.

13. On that date, MRS. BEKERMAN presented to the ship's infirmary at or around 1530.

14. MRS. BEKERMAN presented to the clinic via wheelchair with severe pain in the hip and was unable to weight bear after a fall onboard. She was evaluated by Dr. Chandrasekar who performed a cursory physical exam. The ship's physician prescribed and dispensed some medications, including ibuprofen to MRS. BEKERMAN. The ship's physician did not order an x-ray, advise MRS. BEKERMAN to avoid weight bearing or immediately transfer her to a hospital ashore, as he should have done.

15. Relying on the advice of the ship's medical personnel, MRS. BEKERMAN returned to her cabin rather than seeking further care ashore at a hospital.

16. MRS. BEKERMAN departed the ships hospital in a wheelchair.

17. Approximately two days later as MRS. BEKERMAN was crossing her cabin, she heard an audible "pop" and felt her leg give way causing her to fall to the floor.

18. When MRS. BEKERMAN was transported to the ship's medical center an x-ray was obtained and it was determined that MRS. BEKERMAN had suffered a displaced femoral neck fracture.

19. MRS. BEKERMAN was disembarked in Antigua, where it was confirmed that she had a displaced femoral neck fracture and she was repatriated to Miami, Florida, where she had to undergo complete hip replacement.

## COUNT I: NEGLIGENCE

MRS. BEKERMAN re-alleges the allegations of paragraphs 1 through 19 and further alleges:

20. CELEBRITY, its agents, and/or employees was/were negligent and breached the duty owed to MRS. BEKERMAN, in that it/they:

a. Maintained a hazardous condition, specifically the dangerous and unreasonably slippery deck upon which Plaintiff fell, in failing to maintain the subject areas of the ship in a safe condition and by failing to adequately warn Plaintiff of the dangerous and hazardous condition of the deck about which it had actual or constructive notice;

b. Failed to follow and/or adhere to its own operating procedures and guidelines by failing to measure the slip resistance of the deck;

c. Negligently failed to warn Plaintiff about the unreasonably dangerous condition of the deck, which was known to, should have been known to Defendant and not known to or readily observable by Plaintiff;

d. Negligently failed to properly train and/or supervise its crew members and/or employees to properly maintain the deck that they would not become dangerous, so that the passengers like Plaintiff would not be injured;

e. Negligently failed to institute safety inspection procedures to make sure that such above-described unsafe conditions aboard said vessel, were discovered and made safe;

f. Negligently failed to properly carry out safety inspection procedures to make sure that such above-described unsafe conditions aboard the vessel were discovered and made safe;

g. Negligently failed to have a crewmember present to control passenger traffic in the area and to ensure that passengers did not traverse the area or were properly/adequately warned of the dangerous condition of the deck;

h. Negligently failing to determine whether the surface selected by Defendant provided adequate slip resistance when wet.

21. CELEBRITY was on actual or constructive notice of the danger due to, *inter alia,* numerous prior injuries on the same or similar deck and/or deck surfaces on the *CELEBRITY EDGE* and/or most all of the ships in its fleet. *See, e.g., Taiariol v MSC Crociere,*

*S.A.,* 677 Fed. Appx. 599, 601 (11th Cir. 2017).

22. CELEBRITY was also on notice of the dangerous condition by virtue of its legal and risk management department's investigation and defense of countless substantially similar cases on a fleet wide basis. Defendants maintain computerized searchable records on a fleet-wide basis which records contain evidence of actual or constructive notice.

23. Additionally, the defective and dangerous condition was well known to Defendants because of the use of signs and/or other devices attempting to warn of the unreasonably dangerous condition of the same/similar deck on the *CELEBRITY EDGE* and the other ships in its fleet. *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1288-89 (11th Cir. 2015); *Frasca v. NCL (Bah.), Ltd.,* 654 Fed. Appx. 949, 954 (11th Cir. 2016) (Use of warnings allows the inference that the cruise ship operator had actual or constructive knowledge).

24. The dangerous conditions created a foreseeable zone of risk to MRS. BEKERMAN.

25. CELEBRITY knew about the dangerous conditions, or they existed long enough that CELEBRITY should have discovered them in exercising due care, or they occurred with such frequency that Defendant was on notice of them.

26. CELEBRITY created the dangerous conditions.

27. CELEBRITY's actions in not remedying the dangerous nature of the hidden condition which was well known to CELEBRITY was in willful, wanton, reckless and callous disregard for the safety of MRS. BEKERMAN, did result in serious injury (two hip replacement procedures).

28. As a direct and proximate result of CELEBRITY's negligence as described herein, MRS. BEKERMAN sustained serious injuries, resulting in loss of function, pain and suffering, disability, disfigurement, mental anguish, the expense of medical care and treatment, ***possible*** aggravation of pre-existing medical conditions and loss of the capacity of enjoyment of

life. Additionally, MRS. BEKERMAN lost the value of the monies paid for her cruise and/or carriage aboard CELEBRITYs' passenger cruise ship *CELEBRITY EDGE*. MRS. BEKERMAN's losses are permanent and continuing in nature and she will suffer such losses in the future.

## **COUNT II: NEGLIGENT MEDICAL CARE AND TREATMENT VIA EMPLOYEES OR ACTUAL AGENTS**

MRS. BEKERMAN readopts and realleges each and every allegation contained in paragraphs 1 through 19 as though fully set forth herein, and further alleges as follows:

29. CELEBRITY owed a duty to MRS. BEKERMAN to provide prompt and appropriate medical care upon her presentation to the ship's infirmary on December 14, 2022.

30. CELEBRITY, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly assess the condition of MRS. BEKERMAN;

(b) in failing to timely diagnose and appropriately treat MRS. BEKERMAN;

(c) in failing to order appropriate diagnostic tests to further assess her condition;

(d) in failing to obtain consultations with appropriate specialists;

(e) in failing to properly monitor the patient;

(f) in failing immediately to evacuate the patient from the vessel for appropriate care in a timely manner;

(g) in deviating from the standard of care for patients in BEKERMAN's circumstances.

31. CELEBRITY acknowledged through its hiring and holding out of its medical personnel, including Dr. Chandrasekar, and all nurses, that they acted for CELEBRITY; Dr. Chandrasekar and the nurses manifested the acceptance of that undertaking by providing care to

CELEBRITY's passengers in CELEBRITY's medical center, and CELEBRITY controlled or had the right to control the medical personnel's actions, as more fully set forth *infra* and *supra*.

32. CELEBRITY directly paid the medical personnel for their work in the ship's medical center.

33. CELEBRITY provided all equipment, medications and supplies.

34. The medical center was created, owned and operated by CELEBRITY.

35. CELEBRITY hired and had the right to fire its medical personnel, including Dr. Chandrasekar.

36. As a direct and proximate result of the negligence of CELEBRITY through its employees/agents, as described above, the MRS. BEKERMAN suffered a displaced femoral neck fracture and has had to undergo two unnecessary hip replacement surgeries.

37. Had MRS. BEKERMAN received the appropriate care and treatment, she more likely than not would not have required hip replacement surgery.

38. As a result of the negligence of CELEBRITY, through its employees/agents as heretofore described, BEKERMAN has become obligated to pay significant medical bills and other expenses.

39. CELEBRITY's negligence proximately caused MRS. BEKERMAN's need for two hip replacement surgeries and due to the negligence of the surgeon in Miami, will more likely than not have to undergo a third hip replacement.

WHEREFORE, Plaintiff, TOBY BEKERMAN, demands judgment against the Defendant, CELEBRITY CRUISES, INC, a division of ROYAL CARIBBEAN CRUISES, LTD., for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law and further demands trial by jury of all issues so triable as a

matter of right, as well as any further relief as this Court deems just and appropriate.

**COUNT III: NEGLIGENCE (VICARIOUS LIABILITY OF CELEBRITY BASED UPON APPARENT AGENCY)**

MRS. BEKERMAN readopts and realleges each and every allegation contained in paragraphs 1 through 19 as though fully set forth herein, and further alleges as follows:

40. CELEBRITY owed a duty to MRS. BEKERMAN to provide prompt and appropriate medical care upon his presentation to the ship's infirmary on December 14, 2022, and thereafter.

41. CELEBRITY, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

(a) in failing to properly assess the condition of MRS. BEKERMAN;

(b) in failing to timely diagnose and appropriately treat MRS. BEKERMAN;

(c) in failing to order appropriate diagnostic tests to further assess her condition;

(d) in failing to obtain consultations with appropriate specialists;

(e) in failing to properly monitor the patient;

(f) in failing immediately to evacuate the patient from the vessel for appropriate care in a timely manner;

(g) in deviating from the standard of care for patients in MRS. BEKERMAN's circumstances.

42. At all times material, CELEBRITY, held out its medical staff, including its doctors and nurses, as its apparent agents who work in CELEBRITY's "medical centers" on the vessel. CELEBRITY promotes its medical staff and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel. That CELEBRITY held out its staff, including Dr. Chandrasekar, and Cleofe Cleofe, R.N., as

being its direct employees or its actual agents.

43. That CELEBRITY promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce passengers such as MRS. BEKERMAN to cruise on its ships.

44. That CELEBRITY manifested to the MRS. BEKERMAN that its medical staff, including Cleofe Cleofe, R.N. and Dr. Chandrasekar, were acting as its apparent agents in various ways, including but not limited to the following:

(a) the doctor and nurse both worked at what the CELEBRITY describes in its advertising as its "medical centers";

(b) that the "medical centers" are owned and operated by CELEBRITY, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

(c) that the passenger is billed directly by CELEBRITY through the passengers' Sign and Sail Card,

(d) whereas the "medical staff', including the doctor and nurse, are paid salaries by CELEBRITY, to work in the "medical centers"; and

(e) that CELEBRITY has the right to hire and fire the physicians and nurses, including Dr. Chandrasekar.

45. The medical staff in this case, including Dr. Chandrasekar and Cleofe Cleofe, R.N., were required by CELEBRITY to wear CELEBRITY uniforms which include name tags, and which display the CELEBRITY name and logo.

46. Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line. CELEBRITY through its actions and conduct represents to its

cruise passengers including, but not limited to MRS. BEKERMAN herein, that the shipboard physicians and medical staff work for the benefit of CELEBRITY. These actions and conduct of the cruise line include but are not limited to the following:

(a) The Defendant controls cruise line physicians' attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

(b) The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification from claims for negligence and health care;

(c) The Defendant cruise line requires that the ship's physicians sail with the ship;

(d) The Defendant cruise line provides the onboard Medical Center;

(e) The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line, and which is supplied and equipped by the cruise line;

(f) The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

(g) The ship's physicians represented themselves to passengers that they are employees of Defendant, CELEBRITY;

(h) The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

(i) The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships; and

(j) The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

47. The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

48. Both the ship's doctor and the nurses were held out to the passengers by CELEBRITY as members of the ship's crew.

49. CELEBRITY put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

50. The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

51. Both the ship's doctor and nurses are permitted to eat with the ship's crew.

52. The ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff had no alternative to going to the ship's medical center to be seen for her symptoms.

53. At the time of MRS. BEKERMAN's illness, MRS. BEKERMAN was seen, examined, and treated by the ship's nurse and/or physician.

54. Based on the foregoing, MRS. BEKERMAN reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of CELEBRITY and was never given any reason to believe otherwise.

55. MRS. BEKERMAN relied to their detriment on their belief that the physician and nurse were direct employees or actual agents of the Defendant in that MRS. BEKERMAN followed the advice of CELEBRITY's nurse and/or physician and did not seek any further medical testing or evaluation and by not requesting a transfer ashore. MRS. BEKERMAN would not have followed the advice of the ship's medical personnel had she suspected they were not the agents of CELEBRITY.

56. As a result of MRS. BEKERMAN's reliance upon the ship's medical staff, MRS. BEKERMAN was not properly treated and subsequently required two hip replacement surgeries.

57. That CELEBRITY is liable to the MRS. BEKERMAN for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, Plaintiff, TOBY BEKERMAN, demands judgment against the Defendant, CELEBRITY CRUISE LINES, INC., a division of ROYAL CARIBBEAN CRUISES, LTD., for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury of all of the issues triable by right.

Dated this 14th day of March 2024.


MICHAEL F. GUILFORD, P. A.
5800 SW 108 Street
Miami, Florida 33156
Telephone (305) 539-1999
Facsimile (305) 539-1998

By: _________/S/____________
MICHAEL F. GUILFORD
Florida Bar #516066